John GARVIS, Plaintiff-Respondent,

v.

K MART DISCOUNT STORE, Defendant-Appellant.

No. 25288.

Kansas City Court of Appeals,
Missouri.

Oct. 15, 1970.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 7, 1970.

Application to Transfer Denied
Jan. 11, 1971.

R. A. Brown, Jr., Wendell E. Koerner, Jr., Brown, Douglas & Brown, St. Joseph, for defendant-appellant.

Michael Paul Harris, St. Joseph, for plaintiff-respondent.

TIMOTHY D. O'LEARY, Special Judge.

This is an action for false imprisonment. John Garvis obtained a verdict and judgment for $41.21 actual and $12,500 punitive damages against K Mart Discount Store, a Division of S. S. Kresge Company, a corporation (hereinafter referred to as Kresge).

On this appeal Kresge has charged the trial court with error in failing to direct a verdict for defendant at the close of plaintiff's case, in the admission of certain evidence, in the giving of four instructions on behalf of plaintiff, in the refusal of an instruction offered by defendant, and in not setting aside the verdict on the ground that it was excessive by reason of the jury's bias, passion and prejudice.

We set out the evidence necessary for a proper consideration of these contentions of error.

This episode occurred on May 7, 1968, around 7:30 p.m. in defendant's store on the North Belt Highway in St. Joseph, Missouri. The plaintiff, 79 years of age, had resided in St. Joseph, Missouri, for the past 46 years. He had lived in Hungary for 33 years prior to coming to this country and, it is apparent, had some difficulty with the English language. Plaintiff and a Mrs. Norma Atkins, his fiancee, entered the store for the purpose of buying wedding rings for their marriage, which was set for May 14, 1968, and was effected on that date.

At the time of this occurrence defendant had a security arrangement wherein they had a guard desk set up in the front of the store about ten feet from the front entrance, which had four doors. On the store side of the guard desk was a sign stating, "Please have your packages tagged here by the officer."

The front door security guards were instructed to greet customers, mark incoming packages with color-of-the-day tags as they came in the front door, and check outgoing packages for either color-of-the-day tags or blue and white cash register slips. The procedure was that if more than one package was purchased in the store, a color-of-the-day tag was attached to that package by the sales clerk and these tags were to be removed by the security guard as the customer left the store. The security guards were instructed never to touch one of the customers.

Mr. Lampe was manager of the defendant's store; Mrs. Nunn was security manager; Lynn Mathias was the security guard on the front door, and Mrs. Shurvington was the sales clerk who sold the plaintiff the wedding rings.

Plaintiff's evidence tended to prove that he and his prospective wife (hereinafter referred to as Mrs. Garvis) entered the store around 7:30 p.m. and purchased two rings at the jewelry counter. These rings were placed in two boxes, which were in turn placed in a sack with the blue and white cash register receipt attached. Plaintiff then headed for the front door approximately 20 feet away, with Mrs. Garvis on plaintiff's left and the sack containing plaintiff's purchase in plaintiff's right hand. As plaintiff and Mrs. Garvis reached one of the front doors to the right of the security desk, Mr. Mathias came up and grabbed plaintiff by the arm, took his package and returned him to the security desk saying that he wanted to see the package. Plaintiff told Mr. Mathias that he had paid for the package and Mr. Mathias replied that plaintiff didn't have a purple ticket on it. Plaintiff then pointed out that he had a ticket clamped on the package and Mr. Mathias again advised that there had to be a purple ticket. Plaintiff then took the package back to the jewelry counter to Mrs. Shurvington and told her he had been accused of shoplifting and that "the man" would not let him leave the store without a purple ticket. Mrs. Shurvington advised plaintiff that a purple ticket was not necessary and she motioned to

Mr. Mathias to let plaintiff leave the store —which he did. Plaintiff had been in this store many times, and was familiar with the front entranceway. The whole episode covered a period of around fifteen minutes and the detention itself lasted five or six minutes. During this time plaintiff saw two people he knew and there were a number of people, possibly 25 or 30 in this vicinity. Mr. Mathias did not accuse plaintiff of stealing.

Mr. Mathias testified for defendant that he was on duty as a security guard that evening and that he was performing the duties of a guard in checking packages when he was involved in the incident with plaintiff. Mr. Lampe, the store manager, and Mrs. Nunn, the security manager, both testified that Mr. Mathias was a security guard and that at the time of this incident was performing the duties of a guard in checking plaintiff's package for a register receipt or a color-of-the-day tag.

 Defendant's first allegation of error is that the trial court erred in overruling defendant's motion for directed verdict at the close of plaintiff's evidence for the reason that plaintiff failed to prove that his restraint was by an agent or employee of defendant. Defendant offered evidence and presented its case after its motion for directed verdict was overruled, and having done so, waived the motion. By reason of this waiver, any error in overruling the motion at the close of plaintiff's case is not the subject of a review on appeal. Veterans Linoleum & Rug, Inc. v. Tureen, Mo.App., 432 S.W.2d 372 and cases cited under Sup.Ct. Rule 72.01 (note 11) V.A. M.R.

Defendant alleges error in allowing Mr. and Mrs. Garvis to relate certain conversations (detailed in our Statement of Facts) they had with the person who restrained plaintiff for the reason that there was no proper foundation laid showing that this person was an employee or agent acting within the scope of his employment and therefore this evidence was hearsay.

Although this contention of error could be briefly ruled on the basis that the alleged error could not be prejudicial error by virtue of Mr. Mathias' testimony for defendant that he was the employee involved and that checking packages was part of his job, Kagan v. St. Louis Public Service Co., Mo.App., 334 S.W.2d 379, and on the additional basis that because there was no dispute as to Mr. Mathias' employment or duties as an employee as evidenced by defendant's testimony and final argument admitting these facts, any error would be harmless, Wehrman v. Liberty Petroleum Co., Mo.App., 382 S.W.2d 56, we elect to consider the question of error.

 In ruling this ground of error it is important to note the proof at the time of the reception of the evidence. Plaintiff had proven that the person who restrained him was at the guard desk, that this person grabbed his arm, took his package, and returned him to the security desk saying he wanted to see the package. Further, that even though this person was advised that the package was paid for and that there was a register receipt attached to it, he insisted that there be a purple ticket. When we consider these facts along with the fact that plaintiff was permitted to leave the store only after Mrs. Shurvington, who sold him the rings, nodded to that person to allow plaintiff to leave the store, we rule the evidence sufficiently adequate to identify that person (Mr. Mathias) as an employee of defendant, acting within the scope of his employment, and to admit the evidence of conversations. The fact of agency or employment need not be proved by direct evidence or writing, but may rest in inference from facts and circumstances and the conduct of the parties. Parker v. Green, Mo.App., 340 S.W.2d 435, 29 Am. Jur.2d 663, p. 715.

The conversations that plaintiff had with Mr. Mathias concerning the necessity of a purple ticket for the sack just purchased are classified as Representative Admissions of an Agent within the course and scope

of his employment and admissible as such. The rule is well stated in 29 Am.Jur.2d, Sec. 662, p. 713.

"It is a general rule of agency that the statements of an agent made within the scope of his employment and with the actual or apparent authority of the principal, are binding on the latter. This principle of the law of agency, though substantive in nature, operates in the law of agency in many instances to render a statement made by one person admissible in evidence as an admission * * * whatever is said by an agent to a third person during the course of his duties and within the scope of his authority, relative to the business contemplated by the agency in which he is then engaged, is in legal intendment said by his principal and is admissible in evidence against such principal * * *." See Roush v. Alkire Truck Lines, Mo., 299 S.W.2d 518.

■ In the same vein, the defendant's next contention of error has to do with the allegation that the court erred in allowing the manager, Mr. Lampe, to testify as part of the plaintiff's case that at some time after the incident he talked with Mr. Mathias and learned that he was the one involved in the incident. We have already demonstrated that there was an abundance of evidence in the case, including Mr. Mathias' testimony for defendant that Mr. Mathias was the employee on duty as a security guard when this incident occurred and therefore this evidence is admissible as being merely cumulative of the showing of agency otherwise made. Adams v. Carlo, Mo.App., 84 S.W.2d 682.

■ We next look at the allegation of error in admitting the annual report of S. S. Kresge Company for 1967 (Plaintiff's Exhibit No. 2), because of improper identification and no showing of authenticity. The circumstances of this admission were: Mr. Lampe, General Manager of the store, testified as to his familiarity with the report; that it contained sales, profits, as-

sets, et cetera; that he had seen the report a year ago; and that he had nothing to do with the preparation of the report. The objection was on the basis of "insufficient foundation." The proper objection would be that it was hearsay.

The record discloses that Plaintiff's Interrogatory No. 3 requested copies of defendant's income tax returns for the year 1967 and that in lieu thereof defendant's attorney, Mr. Brown, mailed plaintiff's attorney a copy of the Annual Report for 1967, along with a letter (Exhibit 3) to the effect that he believed the report contained the information necessary under Interrogatory No. 3, and if not, to advise him. Attorney Brown then wrote a subsequent letter to plaintiff's attorney advising that the net earnings for 1967 were furnished by him when he sent the Annual Report. In furnishing this Annual Report in response to this interrogatory, defendant vouched for its reliability and authenticity. There was no attempt to introduce the report under the Uniform Business Records as Evidence Act.

In 29 Am.Jur.2d, Sec. 892, p. 999, the writer observes:

"In almost every organized trade or occupation there are handbooks and other publications, containing information of everyday professional and business needs, which are intended to be circulated publicly and to be consulted by persons interested, which are tested by their use, and which are found by their experience to be trustworthy and to be actually relied on by the persons engaged in the particular trade or occupation concerned. Such publications are generally held or assumed to be admissible under an exception to the hearsay rule that has never been precisely formulated. Such publications include trade journals reporting current prices, certain commercial and professional lists, registers and reports, business directories and the like."

We think that an annual report from a national company traded publicly on the stock exchange which was a public document signed by the president of the company, certified by company auditors, mailed to its stockholders and commonly used and relied on in the stock market industry, comes under this general exception to the hearsay rule and is admissible on that basis. Baker v. Atkins, Mo.App., 258 S.W.2d 16; Housden v. Berns, 241 Mo.App. 1163, 273 S.W.2d 794.

Defendant complains of error in allowing several lay witnesses to testify that plaintiff was "being doctored for a heart condition", "got sick", he was "nervous and worked up" over the incident, he was "quite happy" before, but after the incident was "emotionally upset, nervous and quite disturbed".

Defendant argues that in order for these statements to be admissible the witness must first state the facts upon which the opinions are based and that this evidence when related must show facts inconsistent with plaintiff's physical condition prior to the incident. In support of this argument defendant cites Hughes v. Prudential Insurance Co., Mo.App., 179 S.W.2d 630 and several other cases wherein the insanity or mental incompetency of a person was under consideration. We recognize that it has long been the rule in cases where insanity is an issue that as a condition precedent to a lay person giving his opinion as to a party's insanity, the witness must first state the facts upon which such an opinion is based and unless such facts are inconsistent with sanity and mental competency, the witness will not be allowed to give his opinion. Lee v. Ullery, 346 Mo. 236, 140 S.W.2d 5. The statements under consideration are not of the same character, and none of defendant's cited authorities support his position.

The opinions of non-expert witnesses who are familiar with a person whose physical condition is in question are competent evidence on issues concerning the general health and physical condition of a person. The statements admitted were all matters of common speech and observation in regard to the condition of sick or injured persons, and though involving to some extent conclusions and opinions, are not thereby rendered incompetent. Osborne v. Wells, Mo.App., 211 S.W. 887; Tryon v. Casey, Mo.App., 416 S.W.2d 252; 31 Am.Jur.2d, Sec. 95, p. 617.

Defendant contends the court erred in allowing several witnesses to testify that they had overheard others discussing the incident involved for the reason that there was no prior showing whether the content of the conversations was favorable or unfavorable. The only case cited by defendant to support this assertion is Thompson v. St. Louis-San Francisco Railway Co., Mo.App., 3 S.W.2d 1033 (1928). There the court held that no prejudicial error occurs when evidence is introduced by plaintiff to show that acquaintances in the community are discussing the incident of plaintiff's false arrest. The fact that neither the plaintiff nor the defendant on cross examination offered to prove what was said, was held to be of no consequence. The court did not hold that such evidence was improper but merely reasoned that it would be a fair assumption that a man arrested would be talked about by residents of his community and therefore this evidence was unnecessary.

Plaintiff is entitled to recovery by way of general damages for mental suffering, humiliation, disgrace, injury to his feelings, and injury to his reputation. Oliver v. Kessler, Mo.App., 95 S.W.2d 1226; Nelson v. R. H. Macy & Co., Mo. App., 434 S.W.2d 767. It appears to us that plaintiff was entitled to prove that members of the community knew of the incident and were discussing it. His knowledge of such conversations could cause plaintiff suffering, humiliation and disgrace.

Defendant contends Instruction No. 2 should not have been given. The particular objection made is with reference to a sentence reading, "The burden is upon the defendant to cause you to believe the propositions necessary to support its defense that the restraint used by Lynn Mathias was reasonable as submitted in Instruction No. 8." It is contended that the use of the words "to support its defense that the restraint used by Lynn Mathias was reasonable", are an unwarranted modification of MAI 3.01, and assume as facts the elements of restraint and agency. Under Notes on Use of MAI 3.01 the example given reads: "The burden is upon defendant to cause you to believe the propositions necessary to support his defense that plaintiff was contributorily negligent * * *." Of necessity the plaintiff had to modify this language.

Instruction No. 3, MAI 23.04, required a finding that Mathias was the agent of defendant within the scope of his employment. Instruction No. 8, MAI 28.10, now MAI 32.13, directed a verdict for defendant if "* * * plaintiff's restraint was made in a reasonable manner * * *", and Instruction No. 4, MAI 13.05, defined "scope and course of employment", referring to Lynn Mathias' actions. Thus, the jury was specifically directed by Instructions Nos. 3 and 4 to the question of whether Mr. Mathias' acts were within the course of his employment and was specifically directed by Instruction No. 8 to the question of defendant's affirmative defense on the reasonableness of the restraint. In considering the propriety of the questioned instruction in the light of the evidence to which it relates, we point out that Mr. Mathias testified that he was on the guard desk and did have an incident with plaintiff wherein he stopped plaintiff and asked him for a color-of-the-day ticket. Thus there was no real dispute as to the issue of Mr. Mathias' restraint or employment. The only dispute was whether this restraint was reasonable and whether Mathias exceeded the scope of his employment

in grabbing plaintiff's arm, a fact which defendant denied. We think that when all of the instructions are read together there was no room for confusion or misunderstanding, and that the jury was properly instructed under the Missouri Approved Jury Instructions. Bauser v. DeNoble, Mo., 412 S.W.2d 409.

Defendant's next contention of error is in the giving of Instructions numbered 6, 7, and 10. These were the instructions submitting the issue of punitive damages and the error asserted as to all three is that there was no evidence to support the submission of punitive damages.

In considering this question we look at the evidence in the light most favorable to respondent. Even though Mr. Mathias' instructions were that he was not to touch any customers and that a color-of-the-day ticket was not necessary on a customer's package if the customer had a cashier's slip, Mr. Mathias grabbed plaintiff's arm, took the package from plaintiff, compelled plaintiff to return to the guard desk, erroneously advised plaintiff a purple ticket was necessary and that the cash register receipt he had was insufficient, detained plaintiff for five or six minutes, and would not allow plaintiff to leave the store until the sales clerk approved the package. This all under circumstances where defendant was carrying the package in open view in his right hand with defendant's cash register receipt attached to the package.

Defendant asserts that the evidence related does not justify the submission of the issue of malice to the jury for the reason that this evidence failed to prove that Mr. Mathias' acts were done other than in good faith and the honest belief that they were lawful.

In 32 Am.Jur.2d, Sec. 116, p. 163, malice is defined as follows:

"'Malice' as used in the cases which allow recovery for exemplary damages where the imprisonment is actuated by malice, does not necessarily mean anger,

or a malevolent or vindictive feeling toward the plaintiff; but a wrongful act without reasonable excuse is malicious within the legal meaning of the term."

There are a number of Missouri cases defining legal malice as the intentional doing of a wrongful act without just cause or excuse and holding that the act must have been done either with an intent to inflict an injury or under circumstances that the law will imply an evil intent. See Pashalian v. Big-4 Chevrolet Co., Mo.App., 348 S.W.2d 628, and the cases cited therein. Our courts recognize that malice may be implied from the reckless disregard of another's rights and interest. Summers v. Keller, 152 Mo.App. 626, 133 S.W. 1180.

The jury could properly have believed that Mr. Mathias' action in detaining plaintiff under the circumstances related was a wrongful act intentionally done and without just cause or excuse. Defendant's charge of error is overruled.

Defendant asserts error in the refusal of its offered Instruction No. 11, which did not include verdict forms for the allowance of punitive damages. What we have already said disposes of this ground of error.

Defendant's final assignment of error charges that the verdict is so excessive that it evidences bias, passion and prejudice of the jury.

Defendant argues that the mere size of the verdict for punitive damages is indicative of bias, passion and prejudice.

Our courts have made it vividly clear that the mere size of a verdict is not sufficient in and of itself to establish that the verdict was the result of bias, prejudice or misconduct. Skadal v. Brown, Mo., 351 S.W.2d 684, 690, and the many cases cited therein; Nussbaum v. Kansas City Stock Yards Co. of Maine, Mo., 359 S.W.2d 335(4); McConnell v. PIC-Walsh Freight Co., Mo., 432 S.W.2d 292, 301. A verdict which is so grossly excessive as to indicate bias and prejudice is one in which the jury was guilty of misconduct and prejudice engendered during the course of the trial. Such behavior vitiates the entire verdict not only as to the amount of the award, but also as to the determination of liability, and cannot properly be corrected by a remittitur. There must have been some incident or occurrence at the trial, or error committed, of such nature as to engender bias, passion or prejudice. Skadal, Nussbaum, McConnell, supra; Young v. Frozen Foods Express, Inc., Mo.App., 444 S.W.2d 35, 41.

As pointed out in all of the cases cited, the trial court can weigh the evidence and find bias, passion and prejudice on the part of the jury from the amount of the verdict alone, but the appellate court is not permitted to weigh the evidence in considering this point and make such a finding. See Stubbs v. Kansas City Terminal Railway Co., Mo.App., 427 S.W.2d 257.

Defendant fails to point out any incident or occurrence at the trial to justify a finding of misconduct on the part of the jury, and we have found none. We rule this point against defendant.

The question of the excessiveness of the verdict on punitive damages by reason of it not being supported by the evidence and therefore requiring a remittitur of a portion of the amount of the award is not before us for a review.

The judgment is affirmed.

All concur.