Delores BLY and Roland Bly, Appellants,

v.

SKAGGS DRUG CENTERS, INC., Respondent.

No. KCD 28802.

Missouri Court of Appeals, Kansas City District.

Jan. 30, 1978.

Motion for Rehearing and/or Transfer Denied Feb. 27, 1978.

Elwyn L. Cady, Jr., Independence, for appellants.

Danny L. Curtis, Niewald, Risjord & Waldeck, Kansas City, for respondent.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Plaintiffs Delores Bly and Roland Bly, husband and wife, brought an action for damages in two counts against Skaggs Drug Centers, Inc. Count one was a claim by Delores Bly for damages for her alleged false imprisonment by Skaggs. Count two was a claim by Roland Bly for damages for loss of consortium as a result of the alleged false imprisonment of his wife. The case was tried to a jury. At the close of plaintiffs' evidence the trial court sustained Skaggs' motion for a directed verdict as to count two of plaintiffs' petition. Count one of plaintiffs' petition, however, was submitted to the jury and resulted in a verdict in favor of Skaggs and against Delores Bly. Following an unsuccessful joint motion for a new trial, both plaintiffs appealed.

The incidents giving rise to this action occurred on July 1, 1972. The jury could

have reasonably found that around noon on that day Delores Bly (then Delores Stephenson—her marriage to Roland Bly did not occur until the evening of July 1, 1972) went to the Skaggs Drug Store in Raytown, Missouri, to get a prescription for "diet pills" filled. After the prescription was filled, she walked away from the pharmaceutical counter and furtively glanced around the store as she placed the "diet pills" in her purse. She then bypassed the cash register in the checkout area of the store and started to exit the building when she was restrained by David Rogers, assistant manager of the store, for failing to pay for the "diet pills". David Rogers had Delores Bly under surveillance from the time she left the pharmaceutical counter up until the time she was restrained. He did so because the pharmacist who waited on Delores Bly told him over the store's intercom system that the records [1] of the pharmaceutical department indicated that two or three

previous prescriptions filled for Delores Bly were never paid for.

On appeal Delores Bly contends the trial court erred (1) in taking judicial notice of Section 537.125, RSMo 1969,[2] and, after doing so, in reading a portion of subsection 3 thereof to the jury, (2) in refusing Instruction No. 2–A (plaintiff's verdict director) which Delores Bly prepared and requested, and in giving Instruction No. 2 (prepared by the trial court) in lieu thereof, and (3) in giving Instruction No. 3 (Skaggs' verdict director). Roland Bly contends the trial court erred in directing a verdict in favor of Skaggs and against him concerning his claim for damages for loss of consortium.

In a very real sense, Delores Bly was responsible for the error she now associates with Section 537.125, supra. During the course of her direct examination, she was permitted to testify (over defendant's hearsay objection) that a police officer who arrived at the store shortly after she was restrained stated that a person had to phys-

---

1. All prescriptions filled by the pharmaceutical department were placed in a packaging device containing three "stubs". A number was assigned to each prescription, and all three stubs contained the number assigned to that particular prescription. One "stub" was removed and retained by the pharmaceutical department after a prescription was filled, one was removed and retained at the checkout counter when the prescription was paid for, and the third remained with the customer. At the end of each day the "stubs" removed and collected at the checkout counter were cross-checked against those removed and retained at the pharmaceutical counter.

2. "537.125. Shoplifting: Detention of suspect by merchant—liability presumption
 1. As used in this section:
 (1) '*Merchant*', means any corporation, partnership, association or person who is engaged in the business of selling goods, wares and merchandise in a mercantile establishment;
 (2) '*Mercantile establishment*', means any mercantile place of business in, at or from which goods, wares and merchandise are sold, offered for sale or delivered from and sold at retail or wholesale;
 (3) '*Merchandise*', means all goods, wares and merchandise offered for sale or displayed by a merchant;
 (4) '*Wrongful taking*', includes stealing of merchandise or money and any other wrongful appropriation of merchandise or money.

2. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money. Any such reasonable detention shall not constitute an unlawful arrest or detention, nor shall it render the merchant, his agent or employee, criminally or civilly liable to the person so detained.
 3. *Any person willfully concealing unpurchased merchandise of any mercantile establishment, either on the premises or outside the premises of such establishment, shall be presumed to have so concealed such merchandise with the intention of committing a wrongful taking of such merchandise within the meaning of subsection 1*, and the finding of such unpurchased merchandise concealed upon the person or among the belongings of such person shall be evidence of reasonable grounds and probable cause for the detention in a reasonable manner and for a reasonable length of time, of such person by a merchant, his agent or employee, in order that recovery of such merchandise may be effected, and any such reasonable detention shall not be deemed to be unlawful, nor render such merchant, his agent or employee criminally or civilly liable." (Emphasis added to delineate the portion read to the jury.)

ically leave the premises of a merchant before they could be apprehended for "shoplifting". Counsel for plaintiff responded to defendant's objection by arguing that the police officer's statement was admissible under the res gestae doctrine (?), and the trial court apparently admitted it on that theory. Immediately prior to the close of defendant's evidence, apparently in an effort to allay any adverse effect the statement attributed to the police officer might have on the minds of the jurors, counsel for defendant asked the trial court to take judicial notice of Section 537.125, supra, and the trial court did so. Defense counsel then asked the trial court to read the first portion of subsection 3 to the jury, and the trial court complied. Counsel for plaintiff objected to the trial court taking judicial notice of Section 537.125, supra, on the ground that it was improper to do so, and on the further ground that there was no evidence to support the defense authorized therein. When these objections failed, and it had become apparent that the trial court was going to accede to defense counsel's request to read a portion of the statute to the jury as evidence in the case, counsel for plaintiff then insisted that the trial court read all of the statute to the jury rather than merely the designated portion, and objected to the trial court's refusal to do so.

 As to the first segment of the above evidentiary point, it was not improper for the trial court to take judicial notice of Section 537.125, supra. As stated in *Bowen v. Missouri Pac. Ry. Co.*, 118 Mo. 541, 24 S.W. 436, 437 (1893), "[i]t is a well-settled rule that courts of justice are bound to take judicial notice of public statutes enacted by the legislature of the state where the courts are held." See also: *State ex rel. and to use of Gagnepain*, 322 Mo. 376, 15 S.W.2d 815, 817 (banc 1929), and *Rositzky v. Rositzky*, 329 Mo. 662, 46 S.W.2d 591, 599 (1932). Moreover, there was sufficient evidence from which the trial court could conclude that the defense authorized by Section 537.125, supra, was available to Skaggs. As to the final segment of this evidentiary point, it was "wholly improper"

for the trial court to read even a portion of Section 537.125, supra, to the jury. *Domijan v. Harp*, 340 S.W.2d 728, 734 (Mo.1960). Perforce, reading all of the statute to the jury, as plaintiff's counsel insisted, would have merely compounded the error. Notwithstanding the error committed by the trial court in reading a portion of Section 537.125, supra, to the jury, doing so did not constitute reversible error as the various objections lodged by plaintiff's counsel were fatally remiss in not stating proper grounds for the exclusion of this otherwise inadmissible evidence. Such being the case, Delores Bly's claim of error on appeal falls within the well settled rule that a trial court will not be convicted of reversible error for admitting inadmissible evidence, even though objected to during trial, if the trial objection is not specific or fails to contain the proper ground for its exclusion. *Stafford v. Lyon*, 413 S.W.2d 495, 498 (Mo. 1967); *Appelhans v. Goldman*, 349 S.W.2d 204, 207 (Mo.1961); *Goodman v. Allen Cab Co.*, 360 Mo. 1094, 232 S.W.2d 535, 539 (1950), and *Gerald v. Caterers, Inc.*, 382 S.W.2d 740, 743 (Mo.App.1964). Plaintiff's counsel missed the mark by failing to object on the ground that reading a portion of the statute to the jury constituted an untimely and inappropriate comment or instruction by the trial court on the law in the case under the guise of favorable evidence on behalf of Skaggs.

Next to be considered is Delores Bly's contention that the trial court erred in refusing Instruction No. 2–A, the verdict directing instruction which she prepared and requested, and in giving Instruction No. 2 in lieu thereof.

MAI 23.04, captioned *"Verdict Directing—False Imprisonment"*, reads as follows:

"23.04. *Verdict Directing—False Imprisonment*

Your verdict must be for the plaintiff if you believe:

Defendant intentionally restrained [instigated the restraint of] plaintiff against his will

[unless you believe plaintiff is not entitled to recover by reason of Instruction No. ___ (*here insert number of affirmative defense instruction*)]."

Instruction No. 2–A, tendered by Delores Bly and refused by the trial court, reads as follows:

"INSTRUCTION NO. 2–A

Your verdict must be for plaintiff if you believe:

David Rogers intentionally restrained and instigated the restraint of plaintiff against her will, unless you believe plaintiff is not entitled to recover by reason of Instruction No. ___.

(MAI 23.04) (REFUSED)."

Instruction No. 2, given by the trial court in lieu of Instruction No. 2–A, and over Delores Bly's objection, reads as follows:

"INSTRUCTION NO. 2

Your verdict must be for plaintiff if you believe:

David Rogers intentionally restrained plaintiff against her will,

unless you believe plaintiff is not entitled to recover by reason of Instruction No. 3.

(MAI 23.04) (GIʼʼEN)"

David Rogers' status as Skaggs employee, and the fact that he was acting within the scope and course of his employment at the time, were never questioned.

■ Delores Bly asserts that Instruction No. 2 prejudicially withdrew from the jury her theory that David Rogers, Skaggs' assistant manager, both intentionally restrained her and intentionally instigated her restraint at the time in question. It is appropriate at this juncture to take note that a party may be held liable for false imprisonment even though he does nothing more than "instigate" the unlawful restraint of another against his will, and "instigate" in this context has been held to mean " 'to stimulate or goad to an action, especially a bad action.' " *Checkeye v. John Bettendorf Market*, 257 S.W.2d 202, 203 (Mo.App.1953). As a party may be held liable for false imprisonment by either intentionally restraining or intentionally instigating the restraint of another against

his will, MAI 23.04, supra, was wisely given a binary dimension by its drafters. The phrase "instigated the restraint of", contained in brackets in MAI 23.04, points up this built-in flexibility. Although the "Notes on Use" and "Committee's Comment" in conjunction with MAI 23.04 make no reference to the bracketed phrase in question, common sense leaves no doubt that alternative submissions are provided by MAI 23.04, the appropriate submission in a given case being dictated by the evidence. The evidence in the instant case discloses that David Rogers, Skaggs' assistant manager, intentionally restrained Delores Bly, as opposed to instigating her restraint in the legal sense obviously connoted by the bracketed phrase in MAI 23.04. All of the evidence viewed in the light most favorable to Delores Bly fails to support the bifurcated, conjunctive submission set forth in Instruction No. 2–A which she tendered and had refused. As Instruction No. 2 given by the court properly conformed to both MAI 23.04 and the evidence in the case, Delores Bly's attack thereon must fail.

■ Instruction No. 3, given at the request of Skaggs, reads as follows:

"Your verdict must be for defendant if you believe:

First, defendant was engaged in mercantile trade, and

Second, defendant had reasonable grounds or probable cause to believe that plaintiff wrongfully had taken or was taking merchandise or money, and

Third, plaintiff's restraint was made in a reasonable manner and for a reasonable length of time for the purpose of investigation."

MAI 32.13, which Instruction No. 3 followed to the letter, is the approved pattern instruction for submitting the affirmative defense authorized by Section 537.125, supra, in false imprisonment cases, which was pleaded by Skaggs. In all candor, the reasons behind Delores Bly's objection to Instruction No. 3 are difficult to ascertain. They appear to be twofold: (1) that Section 537.125, supra, the genesis for the affirmative defense submitted in said instruction,

requires evidence of an actual taking of merchandise from a merchant's premises in order to support the giving of said instruction; and (2) that Instruction No. 3 (in Delores Bly's own words) is a "mish-mash" of "two conditional privileges granted by the statute". Delores Bly's contention that Section 537.125, supra, required evidence of an actual taking of merchandise from Skaggs' premises in order to support the giving of Instruction No. 3 (MAI 32.13) has no foundation in the language of the statute and, in fact, is contrary to its clear and explicit language in two respects. Subsection 2 of Section 537.125, supra, speaks in terms of "reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment" and subsection 3 of Section 537.125, supra, speaks in terms of "willfully concealing unpurchased merchandise of any mercantile establishment, either on the premises or outside the premises of such establishment". Both are antithetic to Delores Bly's contention that merchandise must actually be removed from a merchant's premises before the affirmative defense prescribed by Section 537.125, supra, exonerating a merchant from liability, can be asserted. Delores Bly's complaint that Section 537.125, supra, grants "two conditional privileges", and that Instruction No. 3 (MAI 32.13) is a "mish-mash" of them, fails to score. Section 537.125, supra, and MAI 32.13, which is virtually drawn verbatim therefrom, grant and speak of but one privilege embodied in the affirmative defense prescribed by the statute and submitted by the instruction—the privilege of "[a]ny merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, . . . [to] detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money." MAI 32.13 faithfully follows Section 537.125, supra, and was and is a viable and extant instruction for submitting the statutorily established affirmative defense. Unquestionably, the statutory affirmative defense was supported by the evidence and Skaggs was entitled to have it submitted to the jury. Since MAI 32.13 was applicable, its use was mandatory for submitting Skaggs' affirmative defense. *Bueche v. Kansas City*, 492 S.W.2d 835, 840 (Mo. banc 1973).

Finally, Roland Bly questions the action of the trial court in directing a verdict in favor of Skaggs on his claim for damages for loss of consortium. The trial court was eminently justified in doing so because there was not a scintilla of evidence that Roland Bly sustained any damage as a direct result of his wife's alleged false imprisonment.[3] As so aptly stated in *Hopkins v. Mobile & O. R. Co.*, 33 S.W.2d 1009, 1010 (Mo.App.1931), "[i]n a case of this character, two independent rights of action . . . [exist], one for injury to the wife, and the other for consequential injuries suffered by the husband on account of the loss of society, services, and expenses, which he had been forced to suffer on account of the injuries to his wife . . . [i]njury to the wife does not necessarily imply injury to the husband . . . [t]he injury to the wife is direct and the injury to the husband is indirect . . . [t]he husband cannot recover for an injury to the wife in and of itself, but may recover when it produces damages to him." See also: *Robben v. Peters*, 427 S.W.2d 753, 757 (Mo.App. 1968), and *Alexander v. Kansas City Rys. Co.*, 231 S.W. 66, 67 (Mo.App.1921).

Judgment affirmed.

All concur.

---

**3.** An interesting question surfaces in this case, although never raised or briefed by the parties. Did Roland Bly have a cause of action for damages for loss of consortium since his marriage to Delores Bly occurred subsequent to the incident giving rise to her claim for false imprisonment? This court's limited research indicates that this question appears to be one of first impression in this state and that a split of authority exists in those jurisdictions which have confronted the question.