**Deborah VAUGHN, Plaintiff-Respondent,**

v.

**SEARS ROEBUCK AND CO., Defendant-Appellant,**

and

**J.C. Penney Company, Inc., Defendant-Appellant,**

and

**John O'Rando, Defendant.**

**Nos. 44181, 44182.**

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 21, 1982.

Rehearing Denied Dec. 10, 1982.

Application to Transfer Denied Jan. 17, 1983.

Joel D. Monson, Michael A. Shaughnessy, Jr., St. Louis, for defendant-appellant.

John D. Flynn, St. Louis, Gail Gaus, Clayton, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendants Sears, Roebuck and Co., and J.C. Penney Co. appeal from judgments against them for actual and punitive damages in a false imprisonment case tried before a jury.

Plaintiff's petition sought judgment against Sears, Penney and a Sears employee, O'Rando, for false imprisonment and assault and battery. The assault and battery claim was submitted only as to O'Rando. The jury returned a verdict in favor of O'Rando on both the assault and battery

and false imprisonment submissions and against Sears and Penney on the false imprisonment submissions against them.

In May 1978, plaintiff, 19 years old, and a friend went to the Penney store in Northwest Plaza to shop. The time was between 7:30 and 8:00 p.m. Plaintiff selected two items and presented them to the salesclerk along with a blue Penney credit card bearing the name Jerry Vaughn. She signed the charge sheet "Jerry Vaughn" and wrote on the sheet her home telephone number. Jerry Vaughn was plaintiff's father who had died in 1974. The salesclerk, noting that the blue card was an older issue card and that the signature did not match the one on the back of the card, requested further identification. Plaintiff presented additional credit cards in the name of Jerry Vaughn and, according to her and her friend's testimony, her own Meramec College student identification card. The salesclerk denied that the student I.D. was displayed. Either before completing the sale or immediately thereafter the salesclerk contacted the credit office to check on the card but did complete the sale. While the salesclerk was waiting for a response from the credit office, plaintiff returned to that salesclerk with another purchase which was completed with the same credit card. Plaintiff and her friend then left Penney and went to Sears.

An employee in Penney's credit department testified she attempted to call the number on the saleslip but received no answer. Plaintiff's mother testified that at approximately 8:00 p.m. she received a call from someone who stated a connection with Penney's credit office and inquired whether Deborah had authorization to use the Penney card. The mother answered affirmatively and the caller hung up before the mother could inquire about the reason for the call. The credit office employee called a Penney's security officer and advised her that the regional credit office in Kansas wanted the credit card picked up.[1] The

security officer talked to the salesclerk, obtained a description of plaintiff and her friend, contacted the central Northwest Plaza Security operator, and issued a "Plaza alert." Under a "Plaza alert" information is simultaneously relayed by telephone to each store in Northwest Plaza and to the St. Ann police department. Penney's security officer told the central operator she wanted to get a credit card back from plaintiff. The Plaza alert call came through to Sears at about 8:00 p.m. and was reported to O'Rando, a St. Ann policeman and part-time security guard at Sears. O'Rando spotted plaintiff and her friend and contacted the St. Ann police probably on two occasions. He was advised that Penney's security officer wanted the girls detained until she could talk to them.

At that point, O'Rando ordered the young women to go through a warehouse section of the store to the security office. The evidence was in conflict as to the extent of force used to effectuate the trip to the security office. The Penney's security officer arrived about ten minutes after plaintiff reached the security office after being advised by O'Rando that he had the two young women in custody. The security officer was shown plaintiff's student I.D. and then asked for and received the Penney credit card which she kept. About fifteen minutes after the security officer arrived, the plaintiff and her friend were allowed to leave with apologies for the "inconvenience." No attempt was ever made to retrieve the purchased merchandise from plaintiff.

## SEARS' APPEAL

The only issue we need resolve on Sears' appeal is its contention that the jury verdict in favor of O'Rando on the false imprisonment claim mandates a judgment for it because its liability is purely vicarious. The general rule of inconsistent master-servant verdicts is set forth in *Stokes v. Wabash R. Co.,* 355 Mo. 602, 197 S.W.2d 304

1. This request was made during a telephone call between the credit office employee and the    regional office.

(1946) [7]. Where the petition imputes the negligence of the servant to the master and relies solely on that negligence, the verdict of the jury in favor of the servant discharges the master. The same rule applies to intentional torts, including false imprisonment. *Vest v. S.S. Kresge Co.,* 213 S.W. 165 (Mo.App.1919) [1–3]; *Wade v. Campbell,* 211 Mo.App. 274, 243 S.W. 248 (1922) [2].

■ Plaintiff's petition alleged that O'Rando was an employee and agent of Sears operating within the scope of his employment. Plaintiff alleged the issuance by Penney of the Plaza alert and alleged further: "That Defendant O'Rando, acting on said request, did apprehend Plaintiff while she was in Sears Store as a business invitee, and with an agent of Defendant Penneys, did unlawfully imprison her without probable cause and against her will for a period of approximately one hour." No other allegation of conduct by Sears is alleged except for plaintiff's conclusory allegation that her damages were the result of "the actions of all defendants acting in concert." Although plaintiff contends that that conclusion expands the charges against Sears beyond the actions of O'Rando, we are unable to see how. That allegation is consistent with the allegation previously quoted concerning O'Rando and in no way alleges any action by Sears other than those performed by O'Rando. Plaintiff also points to evidence of the presence at the scene of two other security employees of Sears and to Sears' participation in the Plaza alert. Neither of these circumstances was pleaded as a basis for liability of Sears. Additionally the other two employees were merely present at the scene, they did not actively restrain plaintiff nor effectuate her custody. Factually their participation does not fall under the exception found in *Vest v. S.S. Kresge, supra.* There was also no evidence that Sears' participation in the Plaza alert system was primarily responsible for plaintiff's detention as required by *Grace v. Smith,* 270 S.W.2d 79 (Mo.App.1954) [3] to prevent exoneration of the master by the verdict for the servant. There is no evidence that O'Rando was required or ordered by Sears to detain plaintiff because of the "Plaza alert," either specifically here or as a general policy matter. The Plaza alert was, on the evidence, an information dispensing system. O'Rando's response to that information was his own, based upon his judgment and evaluation of the situation. Sears' liability arose from his status as an employee not from its independent actions or policies. The jury's verdict in favor of O'Rando required the entry of judgment for Sears.

### PENNEY'S APPEAL

■ Initially Penney contends that plaintiff's pleading against Penney was based upon the intentional tort of false imprisonment not upon the submitted theory of instigating a false imprisonment. We are not convinced that these are two separate torts, but rather believe they are two different methods of proving the same tort, false imprisonment. *Bly v. Skaggs Drug Centers, Inc.,* 562 S.W.2d 723 (Mo.App.1978) [6, 7]. That aside, the petition alleges the issuance of the Plaza alert to other merchants "to apprehend and detain" plaintiff for Penney's security officer, and O'Rando's apprehension of her pursuant to the request of Penney. Such an allegation is sufficient to plead Penney's "stimulation" or "encouragement" of plaintiff's detention. *Bly v. Skaggs Drug Centers, Inc., supra; Checkeye v. John Bettendorf Market, Inc.,* 257 S.W.2d 202 (Mo.App.1953) [1]. We find no deficiency nor variance in plaintiff's pleadings.

■ Next Penney contends that it established, as a matter of law, its affirmative defense based upon Sec. 537.125.2, RSMo 1978. That defense is based upon "reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise." As a general rule the defense of probable cause is a question of fact for the jury. *Parrott v. Reis,* 441 S.W.2d 390 (Mo.App.1969); *Nelson v. R.H. Macy & Co.,* 434 S.W.2d 767 (Mo.App.1968) [2, 3]. Plaintiff's evidence was that plaintiff furnished identi-

fication that she had the same last name as the person named on the credit card, that she supplied her home telephone number, and that her mother advised Penney of plaintiff's authority to use the card. All of this, inferentially at least, occurred prior to the issuance of the Plaza alert. The evidence further supported a finding that, throughout, Penney was interested primarily in recovering an obsolete credit card not in investigating a wrongful taking of merchandise. Under the facts here the affirmative defense presented a question of fact for the jury.

Penney next challenges the verdict-director against it on the basis that it did not require a finding of "intentional" instigation. "Instigate" means to "goad or urge forward." Webster's Third New International Dictionary 1171 (1976); *Bergel v. Kassebaum,* 577 S.W.2d 863 (Mo.App.1978) [4]. It is difficult to perceive it as an unintentional act. MAI–23.04 effective at the time of trial provided: "Your verdict must be for the plaintiff if you believe: Defendant intentionally restrained [instigated the restraint of] plaintiff against his will." It is reasonable to interpret that instruction as substituting "instigated the restraint of" for "intentionally restrained" rather than for "restrained" alone. The 1981 MAI forms effective January 1, 1982, rearranged the brackets to group "intentionally restrained" and "instigated the restraint of" separately. The 1982 revision effective January 1, 1983, has again rearranged the brackets so that intentionally is now a modifier for both "restrained" and "instigated the restraint of." Given this history we are unable to find the instruction to be erroneous. It was not until the 1982 revision that MAI clearly required "intentional" to modify the instigation clause. Here there was never any question that the issuance of the Plaza alert was intentional; the only questions were whether it instigated plaintiff's apprehension and whether it was justified.

Penney also raises a series of alleged instructional errors. We have reviewed these and conclude that any deviations from MAI were so insubstantial that we cannot find them prejudicial. *Salsberry v. Archibald Plumbing & Heating Co., Inc.,* 587 S.W.2d 907 (Mo.App.1979) [15]; *State Farm Mutual Automobile Ins. Co. v. Jessee,* 523 S.W.2d 832 (Mo.App.1975) [7].

Judgment against Sears, Roebuck and Company reversed, judgment against J.C. Penney Company, Inc. affirmed.

SATZ and PUDLOWSKI, JJ., concur.