**Domanic SIGNORINO,**
**Plaintiff/Respondent/Cross–Appellant,**

v.

**NATIONAL SUPER MARKETS, INC., Brian Hiltibidal and Ken Fortner, Defendants/Appellants/Cross–Respondents.**

No. 55808.

Missouri Court of Appeals,
Eastern District,
Division Six.

Dec. 5, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 3, 1990.

---

Richard Schwartz, James E. Parrot, St. Louis, for defendants/appellants/cross-respondents.

Ann Hamilton, Hazelwood, for plaintiff/respondent/cross-appellant.

GRIMM, Presiding Judge.

In this jury-tried case, plaintiff received a $25,000 judgment against defendants for false arrest. In addition, he received a $50,000 judgment for punitive damages against National Super Markets, Inc. The trial court sustained National's Motion for Judgment Notwithstanding the Verdict as to punitive damages, but denied it otherwise. All parties appeal. We affirm.

Defendants raise two points. First, the trial court erred in failing to direct a verdict for defendants; because plaintiff "failed to prove that [defendants], without just cause or excuse, restrained or instigated the restraint of [plaintiff] against his will in that [defendants'] evidence established justification as a matter of law and [plaintiff] failed to prove that [defendants] instigated his restraint by the St. Louis Police Department." We disagree, because material facts were in dispute and the trial court correctly submitted the issues, including defendants' affirmative defense, to the jury.

Second, the trial court erred in failing to direct a verdict for defendants; because plaintiff did not produce substantial evidence of his injuries. We disagree, because there was sufficient evidence.

Plaintiff, in his cross-appeal, raises one point. He contends that the trial court erred in granting National's motion for j.n.o.v. on the issue of punitive damages; because there was sufficient evidence of actual malice. We disagree, because under the controlling cases, there was insufficient evidence to justify punitive damages.

## I

The evidence in this case as to what occurred sharply conflicted. In determining whether plaintiff made a submissible case, however, "we must construe the evidence, together with all reasonable inferences drawn therefrom, in a light most favorable to the plaintiff." *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 504 (Mo. banc 1986).

Plaintiff went to a National super market to get several items, including Benzodent, a denture-pain cream. After selecting several grocery items, he went to the area where health items were displayed.

Although plaintiff's dentist had given him a sample tube of Benzodent, plaintiff was not familiar with the packaging of the product. After looking around for five or six minutes, plaintiff picked up a Benzodent box, opened it, took out the tube, and looked at it. Deciding that was what he wanted, he put the tube back in the box. Since the box was small, he did not put it in the shopping cart. Rather, he kept it in his hand. He never put either the box or tube in his pocket.

Plaintiff started towards the check-out area. He then decided to purchase a larger tube of Benzodent, so he returned to that display area. He put the small Benzodent box back on the shelf and selected a larger box. He kept the larger Benzodent box in his hand and went back towards the check-out area. Plaintiff then paid for the items.

After plaintiff went through the check-out area, a store employee, defendant Hiltibidal, approached him. Hiltibidal "held a

badge in one hand and an empty carton in the other hand and said, 'Where is the tube that belongs in here?'" Plaintiff did not know what kind of carton the guard had. Plaintiff asked, "Why you bother me?"[1] The guard, according to plaintiff, said "I not bother you. You're going to give me the tube." Plaintiff then stated he had to get out of there, and showed Hiltibidal the receipt for his purchases. In addition, plaintiff opened the grocery bag to show Hiltibidal its contents. Finally, he pulled his front pockets inside out and showed that he had only keys and change in his pockets.

Plaintiff started to leave. At this time, a store detective grabbed him by the arm and pushed him back towards Hiltibidal. The detective told plaintiff "You can't go home." The store detective then took plaintiff to an office in the customer service area. There, in the presence of the manager, plaintiff said "nothing except let me go home." Five to fifteen minutes later, the police arrived in response to a store employee's call. A police sergeant asked plaintiff to tell him what happened, but the sergeant could not understand plaintiff.[2]

Several witnesses, including two police officers, testified that plaintiff shouted, screamed, flapped his arms around, and cursed. Plaintiff, however, testified that he never moved his arms around or threatened to hit anybody. Nor did he become abusive or use any profane language.

Plaintiff acknowledged that none of National's employees asked the police to arrest him. Rather, the police sergeant told another officer to "put handcuffs on him for peace disturbance," and the officer did. Plaintiff was taken to a police station, kept there for a couple of hours, given a summons for peace disturbance, and returned to the store parking lot to get his car.

## II

■ Defendants' first point alleges trial court error in failing to direct a verdict for

---

1. Plaintiff was 65 years-old at the time of this incident. He lived on the island of Sicily for 30 years before moving to St. Louis. At trial, an interpreter was used for part of his testimony.

2. The transcript reflects that the trial court and attorneys all had difficulty understanding plaintiff.

defendants; because plaintiff "failed to prove that [defendants], without just cause or excuse, restrained or instigated the restraint of [plaintiff] against his will in that [defendants'] evidence established justification as a matter of law and [plaintiff] failed to prove that [defendants] instigated his restraint by the St. Louis Police Department."

Defendants first contend their "actions were justified as a matter of law." As a general rule, the defense of probable cause is a question of fact for the jury. *Vaughn v. Sears Roebuck and Co.*, 643 S.W.2d 30, 33 (Mo.App.E.D.1982). If the material facts are in dispute, with one version establishing reasonable grounds and another version refuting it, then the jury must determine which set of facts existed. *Redican v. K–Mart Corp.*, 734 S.W.2d 864, 868 (Mo.App.W.D.1987).

Defendants base their contention on what they say is "undisputed" evidence. They point to their evidence that "an empty box of Benzodent was found hidden in the beer shelf" and defendant Hiltibidal held the box in his hand when he approached plaintiff. They point further to plaintiff's "unusual shopping behavior," and the fact that store employees watched plaintiff before detaining him in order to see if plaintiff paid for both tubes.

The store detective testified that he saw plaintiff with the box in his hand in the "warm beer section." Plaintiff, according to this detective, put his hands under some shelving. When he brought his hands back out, the box was gone, but his right hand had the tube. The detective saw plaintiff put the tube in his right front pocket. Later, Hiltibidal retrieved the Benzodent box from underneath the shelving and showed it to the store detective.

Contrary to defendants' assertion, this evidence was disputed. Plaintiff was asked if he threw away "any Benzodent box" in the store that afternoon. His response was "I no throw any box away, no." Also, he said, "I didn't put nothing on the shelves." In addition, plaintiff testified that he turned his front pants pockets inside out in front of Hiltibidal and the store detective. The pockets did not contain a tube of Benzodent.

Under the facts here, justification was not established as a matter of law. Rather, the affirmative defense presented a question of fact for the jury.

Defendants next contend that plaintiff failed to prove that defendants instigated plaintiff's arrest by the police. We need not address that contention. Plaintiff made a submissible case of false arrest based on the detention which occurred before his arrest. *See Vaughn*, 643 S.W.2d at 33–34.

Defendants also contend that the detention of plaintiff "was made in a reasonable manner and for a reasonable period of time." Defendants primarily rely on *Teel v. May Dept. Store Co.*, 348 Mo. 696, 155 S.W.2d 74 (Mo.Div. 1 1941). They argue that plaintiff "produced no evidence that the detention was made in an unreasonable manner or for an unreasonable length of time."

Defendants offered, and the court gave, an affirmative defense instruction patterned after MAI 32.13 [1978 Revision]. That instruction directs the jury to find for defendants if the jury believes, among other things, that "plaintiff's restraint was made in a reasonable manner and for a reasonable length of time for the purpose of investigation."

■ Contrary to defendants' contention, plaintiff did not have the burden to prove that "the detention was made in an unreasonable manner or for an unreasonable length of time." Rather, defendants had the burden of proof on this affirmative defense. *Stewart v. K–Mart Corp.*, 747 S.W.2d 205, 208 (Mo.App.E.D.1988).

■ Plaintiff's evidence was that he showed store employees (1) the receipt for his purchases, (2) the contents of his grocery bag, and (3) his front pockets, which did not contain the tube of Benzodent. Plaintiff's evidence also was that following these showings, his arm was grabbed by a store detective, he was pushed, and he was told he could not go home. He was then taken to an office in the store. Since the

material facts were in dispute, the evidence supporting the affirmative defense presented a question of fact for the jury. *Vaughn*, 643 S.W.2d at 33–34. Defendants' first point is denied.

## III

Defendants' second point is that the trial court erred in failing to direct a verdict because plaintiff "failed to prove that he was damaged in that [plaintiff] did not produce substantial evidence that he suffered from medically significant mental distress which was the foreseeable, natural result of [defendants'] unlawful actions." Defendants allege that plaintiff failed to prove, in accordance with the standards set forth in *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983), that he sustained damages for emotional distress. Defendants further allege that plaintiff failed to prove the proximate cause of his injuries.

Defendants' reliance on *Bass* is misplaced. *Bass* involved a negligence action. False imprisonment, on the other hand, is an intentional tort. *Bass* recognized "the entrenched rule" in Missouri that "a defendant is not liable for negligence resulting in emotional distress unless the plaintiff suffered a contemporaneous traumatic physical injury." *Bass*, 646 S.W.2d at 768. *Bass* established a new rule for the recovery of damages for emotional distress in negligence cases. There is nothing in *Bass* to support defendants' contention that the *Bass* standards are applicable to intentional torts.

In assessing actual or general damages for false arrest, a jury can properly consider such things as embarrassment, disgrace, humiliation, injury to plaintiff's feelings or reputation, and mental suffering. *Nelson v. R.H. Macy & Co.*, 434 S.W.2d 767, 774 (Mo.App.W.D.1968); *Garvis v. K–Mart Discount Store*, 461 S.W.2d 317, 322 (Mo.App.W.D.1970). Long before *Bass*, as reflected in *Nelson* and *Garvis*, plaintiffs could recover in false imprisonment cases for embarrassment, disgrace, humiliation, and mental suffering. Here, plaintiff presented evidence of this type which the jury could properly consider.

Defendants also allege that plaintiff failed to produce sufficient evidence of the causal relationship between defendants' actions and plaintiff's damages. Suffice it to say that the record is replete with testimony from plaintiff, his physician, as well as his family and friends, that plaintiff's life changed substantially as a result of the false arrest. Point denied.

## IV

Plaintiff's cross-appeal raises one point: the trial court erred in granting the j.n.o.v. on punitive damages, because "the evidence conflicted on the fact that National acted with actual malice."

Our supreme court, in *Sanders v. Daniel International Corp.*, 682 S.W.2d 803 (Mo. banc 1984), clarified the element of malice required in malicious prosecution cases. It also discussed the malice required for an award of punitive damages in those cases. For punitive damages, "actual malice is required." *Id.* at 815.

In *Stewart v. K–Mart Corp.*, 747 S.W.2d 205, 208–209 (Mo.App.E.D.1988), we said that *Sanders* "was decided on a theory of public policy advocating citizen assistance in enforcing criminal laws.... That is, it would not be beneficial to punish someone for helping to enforce criminal laws when there is no indication of bad motive." Citizens should not be punished for "their assistance, even if wrongfully given," unless they act with a wrong motive. *Id.* at 209. The holding in *Sanders* was held applicable to a false arrest case. *Id.*

Earlier this year, our supreme court again wrote extensively about malice and the requirements for an award of punitive damages. In *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989), the court stated that the existing instructions (MAI 10.01 and 16.01) "do not clearly articulate the circumstances justifying punitive damages in a case of intentional tort." The court adopted a new MAI 10.01 which does not use the terms "malice" or "malicious." Rather, the instruction requires the jury to find defendant's conduct "was outrageous because of defendant's evil motive or reck-

less indifference to the rights of others" in order to award punitive damages. *Id.* at 789.

Here, the trial court ruled defendants' motion for j.n.o.v. before *Burnett* was decided, and thus did not use *Burnett* terminology. Rather, the trial court stated "the plaintiff failed to present evidence that [National] through any employee acted with actual malice, consisting of hatred, spite or ill will."

We have read the entire record and agree with the trial court's statement. Further, we have not found any evidence that National's conduct was outrageous. The evidence here does not indicate that National had an evil motive or displayed reckless indifference to the rights of others. Under the holdings and teachings of *Stewart* and *Sanders*, plaintiff's point is denied.

V

The judgment of the trial court is affirmed, both as to the award of actual damages and the denial of punitive damages.

HAMILTON, J., and JOSEPH J. SIMEONE, Senior Judge, concur.